# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | HARRY D. LEINENWEBER | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1153 | **DATE** | May 23, 2001 |
| **CASE TITLE** | Brien Buck, Sr. v. Warden Briley, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for preliminary injunction [6] is denied. After initial review pursuant to 28 U.S.C. § 1915A the court dismisses the complaint for failure to state a claim upon which relief may be granted. Plaintiff may file an amended complaint in compliance with the requirements of this order within thirty days of the date of this order. Failure to do so may result in dismissal with prejudice. Plaintiff's motions for appointment of counsel [3-1, 5-1] are denied without prejudice at this time.

(11) ■ For further detail see memorandum opinion and order attached to the original minute order.

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAY 2 4 2001 date docketed | |
| ✓ | Docketing to mail notices. | | 13 |
| | Mail AO 450 form. | CM docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 MAY 24 AM 8:10 | |
| KS | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRIEN K. BUCK, Sr. (#B-65064), )
                                        )
       Plaintiff, )
                                        )   No. 2001 C 1153
  v.                                  )
                                        )   Judge Leinenweber
KENNETH R. BRILEY, et al., )
                                        )
      Defendants. )

Judge Harry D. Leinenweber
U.S. District Court

## MEMORANDUM OPINION AND ORDER

Plaintiff Brien Buck, an inmate at Stateville Correctional Center, has filed this pro se civil rights action under 42 U.S.C. § 1983 against the warden of Stateville, Kenneth R. Briley, and other correctional personnel. Buck's motion for leave to proceed without prepayment of the filing fee is granted, and installment payments are assessed pursuant to the Prison Litigation Reform Act (PLRA). 28 U.S.C. § 1915(b).[1]

### ALLEGATIONS OF THE COMPLAINT

Buck alleges that on December 8, 2000 he was transferred to Stateville from Pontiac Correctional Center, together with his personal property. When he arrived, he was informed by defendant Sergeant Nickerson that he would be able to obtain his legal books and legal material within 72 hours. He did not receive his legal materials. Denied even a pen and paper until December 13, 2000. He states that "after a failed attempt to obtain his legal books and material he was transferred by defendant Captain Wainscott to the "bug wing," put in a cold "strip out cell" and given "a reprisal disciplinary infraction."

On December 13, 2000, Buck obtained paper and pen from another inmate and wrote a complaint to defendant Warden Briley. On December 16, he prepared a "law suit" on toilet paper and requested that defendant Wintersteed, the law librarian, have it copied and sent. Wintersteed and his staff "refused wantonly" to assist him.

On December 17 or 18, Buck received his personal property, but his legal books and materials were "maliciously denied." Buck wrote Wintersteed and Briley attempting to obtain his "legal books, material, copies and

---

[1] Buck is assessed an initial partial filing fee of $7.50. The trust fund officer at Buck's current place of incarceration is ordered to collect, when funds exist, the partial filing fee from Buck's trust fund account and pay it directly to the clerk of court. After payment of the initial partial filing fee, the trust fund officer at the correctional facility where Buck is confined is directed to collect monthly payments from Buck's trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments shall be forwarded to the clerk of court each time the amount in the account exceeds $10 until the full $150 filing fee is paid. All payments shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Il. 60604, attn: Fiscal Dept., and shall identify Buck's name and the case number assigned to this action.

13

notary public and was wantonly denied." On December 18 or 19 Buck was transferred to a two-man cell, and he again informed "the defendants" that he was being denied his legal books and materials. On December 23, 2000, Buck spoke with Nickerson and an unknown lieutenant regarding his "legal issue" and was told that he would receive his materials that week, but he did not receive them.

On December 26, 2000, Buck gave his complaint written on toilet paper to an inmate law clerk to be notarized and copied. The clerk told him the next day that he had been directed to destroy the toilet paper and give Buck typing paper, legal envelopes and a pen. Buck complained to his gallery officer, Correctional Officer Par, and Park responded by "wantonly" cutting off the water supply to Buck's cell for six hours and refused to call his superiors.

On December 27, 2000, another law clerk professed not to know what happened to the "toilet paper law suit," said that Wintersteed was waiting for boxes to put Buck's materials in. On December 28, Warden Briley, and Captain Wainscott came to Buck's cell. Briley said he had not received Buck's requests and asked if Buck had legal material in his cell, although they knew he had none.

On February 7, 2001 he was called to the office of Superintendent Thomas, the unit manager of I-House. In the presence of Captain Wainscott, Thomas told Buck that neither he nor "personal property" had any legal material or books for Buck. Wainscott then went to Buck's cell with an unknown assistant warden and major and threw away a towel without giving Buck a shakedown slip. Buck also alleges that on February 5, 2000, Wainscott, during a shakedown of Buck's cell, "confiscated numerous legal documents, exhibits, pens, paper and wantonly destroyed a legal book." (Having complained that such things had never been given him, Buck does not explain where these had come from.) Buck and his cellmate were "given reprisal disciplinary infractions but were not given a shakedown slip.

On February 8, 2001, Buck went down to the "alleged law library" and attempted to bring some of his cases up to his cell. He was told by a cellhouse lieutenant that he was not allowed to keep any legal work in his cell. Buck seeks declaratory and injunctive relief as well as damages.

## MOTION FOR PRELIMINARY INJUNCTION

This suit was filed on February 20, 2001. On March 7, 2001, Buck filed a motion for preliminary injunction, seeking an order enjoining the defendants "to provide appropriate access to legal material, the main prison law library, persons trained in the law, personal legal material belonging to the plaintiff, and to refrain from obstructing, harassment, hindering his access to court, plus from wantonly giving his personal mail to other inmates in retaliation." Buck also asks the court to order Warden Briley to put him in a single-man cell. In a declaration in support of the preliminary injunction, Buck states that he is housed with another inmate who constantly gets into his legal materials and other personal property when he is not in his cell, and "at the command of the defendant" (presumably Warden

2

Briley), Buck's personal mail is being given to other inmates. He alleges that "the defendants have conspired together and also have numerous inmates disrespecting me on the gallery and threat[en]ing to kill me and my family."

The Seventh Circuit recently restated the standards for granting a preliminary injunction. A party seeking a preliminary injunction must demonstrate: (1) some likelihood of success on the merits; (2) it has no adequate remedy at law; and (3) it will suffer irreparable harm if the injunction is not granted. If these conditions are met, the court must balance the irreparable harm that the nonmoving party will suffer if preliminary relief is granted against the irreparable harm the moving party will suffer if relief is denied. Finally, the court must consider the interest of the public and non-parties in denying or granting the injunction. *Ty Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

The court will consider the legal merits of the complaint below, but assessment of "likelihood of success" normally depends on an assessment of the factual basis of the claim going beyond the complaint. Buck has alleged irreparable harm, injury that cannot be compensated by payment of money. Nevertheless, when a prisoner seeks a preliminary injunction against correctional officials the last factor, the public interest, takes on particular importance. The public interest in the safe and orderly management of prisons is great. Prison management is impacted not only by the relief the court may grant to one prisoner, but by the relief other prisoners will demand as a consequence. While federal courts must take cognizance of prisoners' valid constitutional claims, federal courts cannot manage prisons, and must give substantial deference to those who do. *See, e.g. Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Stateville is a maximum-security prison with an average inmate population of 2,660. Buck's rights are no greater than any other inmate who believes he is being treated unfairly. What Buck wants, an order that prison staff not harass him in various ways, would require constant monitoring by the court and involve the court in every instance of discipline, denial of privileges, or assignment of cellmates. Since there are probably hundreds of other prisoners with similar grievances, it becomes clear that the public interest strongly militates against injunctive relief, particularly preliminary injunctive relief, on behalf of an individual prisoner alleging harassment or discomfort that does not represent a serious risk to his life or health.[2] The motion for preliminary injunction is denied.

## REVIEW OF THE COMPLAINT

Under 28 U.S.C. § 1915A, part of the PLRA, the court is required to review complaints filed by prisoners against officers or employees of governmental entities before the complaint is served on the defendants. The court is to dismiss any portion of the complaint it finds frivolous, malicious, fails to state a claim upon which relief may be

---

[2] Buck's vague assertion that the defendants are conspiring to cause other inmates to threaten his life cannot be taken seriously.

3

granted, or seeks monetary relief from a defendant immune from such relief. Section 1915A effectively directs the court to make and rule on its own motion to dismiss the complaint prior to service.[3]

In determining whether a complaint states a claim for purposes of 28 U.S.C. § 1915A, the court applies the usual standards applied to an adversarial motion to dismiss under Rule 12(b)(6). A motion to dismiss should not be granted unless the court concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The court assumes the alleged facts are true and draws every reasonable inference in the plaintiff's favor. *LeBlang Motors, Inc. v. Subaru of America, Inc.*, 148 F.3d 680, 690 (7th Cir. 1998). A pro se complaint is held to less stringent standards than a complaint drafted by an attorney, and for a pro se plaintiff the court considers the allegations contained in all documents filed with the court. *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992). The complaint does not state a claim upon which relief may be granted; because it may be possible for Buck to allege additional facts that would entitle him to proceed he will be permitted to file an amended complaint.

### A. Exhaustion of Administrative Remedies

The PLRA contains a comprehensive administrative exhaustion requirement: "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision requires dismissal of any case in which an available administrative remedy has not been exhausted. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). As long as administrative procedures could grant the prisoner any relief, they must be pursued, even though the prisoner could not receive the relief he could receive in court, e.g., damages. "The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999). Nor is exhaustion excused by an assertion that it would be futile to pursue administrative remedies. *Id.*

Because of the short time between the acts of which Buck complains and the filing of this suit, it appears Buck has not exhausted -- nor perhaps even pursued -- available administrative remedies.[4] The court takes judicial notice of the fact that the Illinois Department of Corrections (IDOC) has an established administrative grievance procedure. If Buck files an amended complaint, he must set forth, with respect to each claim, his efforts to employ the grievance

---

[3] Because defendants are not parties to a suit before being served with process, see *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995), the rulings set forth in this order are not binding upon them.

[4] This court has adopted a form for prisoners' *pro se* civil complaints in which the plaintiff is required to state whether he has used an available inmate grievance procedure. Buck's complaint was not filed using the form.

4

procedure and the result at each step. Administrative remedies must be exhausted *before* suit is filed; a showing that Buck has exhausted administrative remedies after filing this suit will not avoid dismissal.

### B. Access to the Courts

Buck's central claim appears to be interference with his access to the courts by withholding his books and legal materials. In order to state a claim, Buck must allege that one or more defendants (1) through deliberate action, *Kinkaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992), (2) prevented or are preventing him from presenting to a court, *Lewis v. Casey*, 518 U.S. 343, 351 (1996), (3) a claim having at least arguable merit, *id.* at 352-53. While it is questionable that Buck has alleged deliberate action, the complaint completely fails to allege any actual injury. It may be that Buck was delayed a few weeks in putting a complaint on file, but nothing in the complaint suggests that he missed any deadlines or otherwise lost the benefit of an arguably valid legal claim. While he could be entitled to injunctive relief if he is presently being thwarted in his efforts to present a claim to a court, it would appear from his filing of this complaint that his access to the courts is not now being impeded. If Buck wishes to pursue a claim of interference with his access to the courts, his amended complaint must allege facts tending to show that defendants' actions have caused, or threaten to cause, actual injury.

Buck appears to believe that his rights, and IDOC's corresponding obligations, are considerably greater than they are. *Lewis v. Casey* affirmed what the Seventh Circuit had stated in *Smith v. Shawnee Library System*, 60 F.3d 317, 323 (7th Cir. 1995): the right of access to the courts is not a general right to conduct legal research; prisoners do not have a constitutional right to browse in a law library. The right of access to the courts entails no more than enabling inmates to prepare and file their legal claims. As long as prisoners are able to do this, prison officials may limit access to legal materials, and prevent prisoners held in segregation from using the prison law library. *Brooks v. Buscher*, 62 F.3d 176, 179-80 (7th Cir. 1995). "[I]nconvenient or highly restrictive regulations may be entirely appropriate and not violate a prisoner's constitutional right of access, as long as the restrictions do not actually completely deny meaningful access to the courts." *Id.* at 179. Neither denying him writing materials for a few days nor prohibiting him from taking legal materials to his cell violated Buck's constitutional rights.

### C. Confiscation of personal property

Buck alleges that legal papers and books were taken from him, as well as a towel. Random, unauthorized taking or destruction of personal property by correctional officials does not give rise to a federal claim, because state law provides an adequate remedy through the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 512-13 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir.1993); 705 ILCS 50 5/8 (1996). If Buck is alleging

that taking or withholding his legal materials interfered with his access to the courts, he must allege actual injury, as discussed above.

## D. Retaliation

Prisoners have a First Amendment right to seek redress of grievances, which applies to filing internal grievances as well as lawsuits. Actions that would not otherwise violate a prisoner's rights violate the Constitution if done in retaliation for a prisoner's exercise of this right. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). A complaint states a claim for retaliation when it sets forth "a chronology of events from which retaliation may plausibly be inferred." *Zimmerman*, 226 F.3d at 573 (quoting *Cain*, 857 F.2d at 1143 n.6).

### 1. Discipline

Buck alleges he was given "a reprisal disciplinary infraction." The court understands this to mean that Buck was given a disciplinary report, or "ticket," for an infraction he did not commit, in retaliation for filing, or threatening to file, a grievance or suit. Such allegations could state a claim, with the following reservations. If Buck was subsequently found not guilty of committing the infraction, or if he was found guilty but the disciplinary conviction has been overturned, he may sue. If Buck was found guilty of the infraction and lost "good time" credit as a consequence, he cannot sue as long as the disciplinary conviction stands, and the claim must be dismissed as premature. *Edwards v. Balisok*, 520 U.S. 641 (1997). If Buck was found guilty but his punishment did not affect the length of his confinement, *DeWalt*, 224 F.3d at 617-18, holds that the rule of *Edwards* does not apply, and he may sue, although, as with all other claims, he must first have exhausted the administrative appeal procedure.

If Buck wishes to pursue a retaliation claim based on disciplinary action, his amended complaint must allege, with respect to each allegedly retaliatory disciplinary report, (a) facts permitting an inference of retaliation, (b) whether Buck was found guilty, (c) if so, what punishment was imposed and the results of the administrative appeal process, and (d) whether Buck pursued his claim of retaliation (either expressly raised in appeal of the disciplinary conviction or as a separate claim) through the administrative grievance process and what the outcome was.

### 2. Other Retaliatory Acts

It is unclear which other actions by defendants are alleged to be retaliatory. Just as not every "malevolent touch by a prison guard" amounts to an Eighth Amendment excessive-force claim, *Hudson v. McMillian*, 503 U.S. 1, 9

6

(1992), not every minor annoyance inflicted with a retaliatory motive amounts to a constitutional claim. "It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ...." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). *Bart* was not a prison case, but other circuits have applied *Bart* to prisoners' retaliation claims, *see Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999); *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999); *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C.Cir. 1996), *vacated on other grounds*, 523 U.S. 574 (1998); *but cf. Rutan v. Republican Party of Illinois*, 497 U.S. 62, 76 n.8, (1990)(stating in dicta that First Amendment protects against "even an act of retaliation as trivial as failing to hold a birthday party for a public employee when intended to punish her for exercising her free speech rights"). Such one-time annoyances as turning off the water to Buck's cell for six hours, even if done in retaliation for Buck's perceived litigiousness, do not rise to the level of a constitutional claim.

### E. Privacy and Searches

Buck complains that prison staff go through his books and papers and read them. With the possible exception of confidential communications to or from Buck's attorneys, the Constitution does not forbid them to do so. A prison is not a hotel, and an inmate has no Fourth Amendment rights with respect to searches of his cell:

> [W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Buck also complains that his cellmate goes through his papers, but this also violates no constitutional right. The Constitution forbids placing a prisoner with a cellmate known to be a physical threat to him, but not with a cellmate known to be nosy.

### F. Interference With Mail

Prisoners have a First Amendment right to send and receive mail, subject to limitations reasonably based on legitimate penological objectives. *Turner*, 482 U.S. at 89-90; *Zimmerman*, 226 F.3d at 572. However, allegations of sporadic and short-term delays and disruptions are insufficient to state a claim under the First Amendment. *Zimmerman*, 226 F.3d at 572-73. Buck's allegation that his cellmate goes through his mail and shares it with other prisoners does not state a claim. The defendants are not responsible for Buck's cellmate's actions, and a bare allegation of "conspiracy" involving the defendants is not enough. Buck must allege facts from which an agreement

7

can be inferred, and what the conspirators agreed to do. *See Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999); *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998), *cert. denied*, 525 U.S. 930 (1998).

## CONCLUSION

For the reasons stated above, the court finds the complaint fails to state a claim upon which relief may be granted, and the complaint is dismissed with leave to file an amended complaint within thirty days of the date of this order. Buck's motion for appointment of counsel is denied. At this point neither legal research nor discovery is required, and Buck is able to putting his complaint before the court. The court may reconsider should counsel appear necessary at a later time.

If Buck files an amended complaint, the amended complaint must allege that he has properly exhausted available administrative remedies with respect to each claim, as well as sufficient factual allegations to state a claim. The complaint must be legible (the present complaint is written in a script almost too small to read) on standard 8-1/2" x 11" paper. Buck must submit an original, signed amended complaint, a judge's copy, and one service copy for each defendant named. Copies must be exact, word-for-word handwritten copies or photocopies. The amended complaint should allege facts, not argument; if Buck wishes the court to reconsider the conclusions set forth in this memorandum opinion and order, he should file a separate motion to reconsider, not include arguments in the amended complaint. Failure to comply with the terms of this order may result in dismissal with prejudice.

IT IS SO ORDERED.

Harry D. Leinenweber, Judge
United States District Court

DATED: May 23, 2001

8